UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ASA ALEXANDER SAM, ET AL.** | **CASE NO. 6:22-CV-05208** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **BAYOU HOLDCO, INC., ET AL.** | **MAGISTRATE JUDGE DAVID J. AYO** |

## RULING

Before the Court is a Motion for Summary Judgment by Defendant Bayou Holdco, Inc. ("Bayou"), whereby Bayou seeks dismissal of the claims brought against it by Plaintiffs Asa Sam and Tashana Jones, arguing that as Asa Sam's borrowed employer, Bayou is immune from civil liability under 33 U.S.C. § 905(a) of the Longshore and Harbor Workers' Compensation Act ("LHWCA").[1] Plaintiff opposes the motion, to which Bayou has filed a reply.[2] For the reasons that follow, Bayou's motion is GRANTED.

### I.
### BACKGROUND

Plaintiff Asa Sam brings this suit for workplace injuries incurred on April 29, 2021. At the time of the incident, Plaintiff was employed by Global Industrial Solutions, LLC ("Global"), a temporary staffing agency, and was assigned to perform rigging work at a facility owned by Bayou.[3] The accident occurred when Plaintiff fell from a stack of eighteen-inch pipe located on a

---

[1] ECF No. 99. Tashana Jones' sole claim is brought with Asa Jones, on behalf of their minor child, Ahmad Semaj Sam, for loss of consortium.
[2] ECF Nos. 103, 108.
[3] In February 2018, Bayou and Advantage Human Resourcing, Inc. ("Advantage") entered into a "Staffing Agreement," whereby Advantage agreed to provide temporary staffing services for Bayou. ECF No. 99-3. Shortly thereafter, Advantage entered into an "Associate Supplier Master Service Agreement" with Global, whereby Advantage subcontracted Global to provide temporary workers to Bayou on behalf of Advantage. ECF No. 99-4. Global also executed a "Client Addendum" that incorporated the terms of Bayou and Advantage's Staffing Agreement and stated that "all duties, requirements and obligations which Advantage . . . is required to fulfill under the [Staffing Agreement], shall also be duties, requirements and obligations

barge at a dock at the Port of New Iberia. Plaintiff asserts that the fall caused him to sustain "a fractured femur that required extensive emergency care, two leg/hip surgeries, and a need for a total hip replacement surgery that has not yet been performed.[4] Plaintiff subsequently filed this suit to recover for his injuries.

On December 24, 2024, Bayou filed the Motion for Summary Judgment presently before the Court. In its motion, Bayou invokes the "borrowed servant" doctrine, asserting that although Plaintiff was the nominal employee of Global at the time of the accident, he was in fact working for Bayou. Bayou further argues that because workers' compensation is the exclusive remedy for an injured worker against his employer under the LHWCA, Plaintiff may not recover tort damages from Bayou for his injuries. In response, Plaintiff asserts that, at a minimum, material issues of fact exist regarding whether he was the borrowed servant of Bayou, thereby precluding summary judgment on this issue.

## II.
### STANDARD OF REVIEW

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[5] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[6] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating

---

of [Global], under the [Associate Supplier Master Service Agreement]." ECF No. 99-5. There is no dispute that these contracts were in effect at the time of Plaintiff's accident.
[4] ECF No. 128 at 3. The page numbers used in this Ruling are those generated by CM/ECF.
[5] FED. R. CIV. P. 56(a).
[6] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

by competent summary judgment proof that there is an issue of material fact warranting trial.[7]

The opposing party may not create a genuine dispute simply by alleging that a dispute exists. Rather, the opponent must cite "to particular parts of materials in the record," or show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[8] When reviewing a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[9] Credibility determinations, assessments of the probative value of the evidence, inferences drawn from the facts and the like are not to be considered on summary judgment, as those are matters to be decided by the factfinder at trial.[10]

### III.
### LAW AND ANALYSIS

The LHWCA establishes a statutory federal workers' compensation program providing certain maritime workers "with medical, disability, and survivor benefits for work-related injuries and death."[11] To receive compensation under the Act, (1) an employee must be injured in the course of maritime employment; (2) the incident must occur on a maritime situs; and (3) the employee must have maritime status.[12] Under the LHWCA, an employer is immune from tort liability for

---

[7] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).
[8] FED. R. CIV. P. 56(c)(1); *see also id.* at (c)(3) (the court need only consider the cited materials, although it is permitted to consider other materials in the record as well).
[9] *Roberts v. Cardinal Servs., Inc.*, 266 F.3d 368, 373 (5th Cir. 2001).
[10] *See e.g. Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 478 (5th Cir. 2006); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[11] *Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994); *see also MMR Constructors, Inc. v. Dir., Office of Workers' Comp. Programs*, 954 F.3d 259, 262 (5th Cir. 2020).
[12] 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 7:2. (6th ed. Supp. 2024)

accidental injury or death arising out of a covered worker's employment.[13] A covered worker includes a "borrowed employee."[14]

The only dispute in this matter is whether Plaintiff was the borrowed employee of Bayou. To determine whether a worker is a borrowed employee, nine factors must be considered.[15] Although the nine factual inquiries "underlie borrowed-employee status," the ultimate determination "is a question of law for the court to decide."[16] If "sufficient basic factual ingredients are undisputed," summary judgment is appropriate.[17] The Court now turns to the nine factors addressing borrowed employee status.

1. **Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?**

Plaintiff testified at his deposition that Bayou personnel were in control of his work and the pipe offloading operation.[18] He testified that Bayou's foremen conducted daily safety meetings, and that Plaintiff did whatever additional tasks Bayou asked of him, such as cutting grass.[19] According to Plaintiff, Advantage's on-site representative, Alex "T-Black" Fedrejean, did not supervise or direct the Global employees at Bayou's worksite.[20] In light of these facts, this factor supports finding borrowed employee status.

---

[13] *See* 33 U.S.C. § 905(a); *id.* at § 902(2).
[14] *See e.g. Doucet v. Gulf Oil Corp.*, 783 F.2d 518, 520 (5th Cir. 1986); *Raicevic v. Fieldwood Energy, LLC*, 979 F.3d 1027, 1030 (5th Cir. 2020).
[15] *Raicevic* at 1031 (citing *Ruiz v. Shell Oil Company*, 413 F.2d 310 (5th Cir. 1969); *see also Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir.), *amended on reh'g in part sub nom. Melancon v. Amoco Prods. Co.*, 841 F.2d 572 (5th Cir. 1988)).
[16] *Raicevic* at 1031.
[17] *Capps v. N.L. Baroid-NL Industries, Inc.*. 784 F.2d 615, 617 (5th Cir. 1986).
[18] ECF No. 99-2 at 45-46.
[19] *Id.* at 44-45, 48-49.
[20] *Id.* at 46-47; *see also* ECF No. 103-6 at 20-21. Other deponents testified Fedrejean would attend the daily safety meetings, but none testified that Fedrejean actually directed or supervised any of the work Plaintiff or the other temporary workers did for Bayou. *See e.g.* ECF Nos. 103-3 at 29; 103-7 at 16-17; 103-2 at 22-23.

2.  **Whose work was being performed?**

It is undisputed that Plaintiff was performing work for Bayou at the time of the incident, and therefore this factor supports finding borrowed employee status.

3.  **Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?**

Plaintiff asserts this factor weighs against borrowed employee status, pointing to a provision in the Bayou/Advantage "Staffing Agreement" that characterizes the relationship of any temporary employee (such as Plaintiff) to Bayou as "that of an independent contractor," and not Bayou's employee.[21] In response, Bayou correctly notes that contractual provisions such as this do "not automatically prevent borrowed employee status from arising," because "[t]he parties' actions can waive or modify an independent-contractor provision."[22] Bayou then points to Plaintiff's testimony that Bayou personnel told Plaintiff "what needed to be done," and he did whatever Bayou needed him to do.[23] It notes Plaintiff's testimony that he was provided on-the-ground rigger training from Bayou, and that Bayou sent Plaintiff to a rigger certification program.[24] It additionally points to Plaintiff's testimony that Carl Richard, Bayou's foreman, was "in control of the work" and directed the temporary workers with regard to their duties while at Bayou's facility.[25] Finally, it points out that Bayou personnel conducted daily safety meetings that Plaintiff attended.[26]

At this juncture, the Court need not decide whether the parties modified the contract, as the evidence demonstrates that Plaintiff took instructions from, and was supervised by, Bayou

---

[21] ECF No. 99-3 at 4, § (2)(f).
[22] *Raicevic* at 1033 (first quoting *Brown v. Union Oil Co.*, 984 F.2d 674, 677-78 (5th Cir. 1993)).
[23] ECF No. 99-2 at 44.
[24] *Id.* at 31. In fact, when asked whether Global provided him with any training prior to his third assignment with Bayou, Plaintiff responded, "To be honest, no, because Bayou honestly did most of that." *Id.* at 47.
[25] *Id.* at 46, 47; *see also id.* at 32, 33.
[26] *Id.* at 48.

personnel. This is sufficient to make this factor neutral.[27] Stated differently, "the existence of the contract does not counsel against finding borrowed-employee status."[28]

4. **Did the employee acquiesce in the new work situation?**

The focus of the fourth factor is whether the worker was aware of his working conditions and chose to continue working in them.[29] Plaintiff testified that he first worked for Bayou in 2004 or 2005 for four or five months in the pipe coating division.[30] He then had a gap in employment. During his next period of employment, Plaintiff was again assigned to a Bayou facility, and Bayou sent Plaintiff to a certification program to become a rigger, as well as providing Plaintiff with on-the-ground training as a rigger. This second stint with Bayou lasted about three years.[31] Plaintiff then had another gap in employment, followed by another assignment with Bayou beginning in May 2019.[32] He remained on this assignment until work slowed in April 2020 due to the COVID-19 pandemic, at which time Plaintiff received unemployment compensation. He returned to Bayou's facility in either October of 2020 or April of 2021, where he remained until his accident on April 29, 2021.[33]

Under these facts, the Court finds Plaintiff clearly acquiesced in his work situation. In total, Plaintiff worked for Bayou for a minimum of four years and five months. There is no evidence that Plaintiff ever complained to his direct employer or to Bayou about his working conditions.

---

[27] *See Raicevic* at 1033.
[28] *Id.*
[29] *Brown*, 984 F.2d at 678 (5th Cir. 1993); *see also Gaudet v. Exxon Corp.*, 562 F.2d 351, 356 (5th Cir. 1977) (When an employee begins work for an employer under the coverage of the LHWCA, the employee is presumed to have consented to the Act's trade-off of common law damages for LHWCA benefits. Thus, "by the very act of continuing employment, [the borrowed employee] may be assumed to agree that, considering the likelihood of injury and the likely severity of injury within the working conditions he experiences, the benefits offered by the LHWCA in the event of injury are acceptable.").
[30] ECF No. 99-2 at 23, 27, 43.
[31] *Id.* at 28-29, 31-32.
[32] *Id.* at 33-34, 37.
[33] *Id.* at 37-39, 41.

Having performed work for Bayou for years while employed by various temporary staffing agencies, Plaintiff undoubtedly was aware of and able to evaluate the conditions in which he would be working at Bayou.[34] This factor favors borrowed employee status.

5. **Did the original employer terminate his relationship with the employee?**

"This factor does not require a lending employer to sever completely its relationship with the employee, because such a requirement would effectively eliminate the 'borrowed employee' doctrine."[35] Rather, when examining this factor, courts are to "focus on the lending employer's relationship with the employee while the borrowing occurs."[36] Here, there is no evidence that any Global personnel exercised any control over Plaintiff's daily performance or duties while he was working for Bayou, and the Court finds Global's control over Plaintiff was nominal at most while Plaintiff worked for Bayou. Thus, this factor favors a finding of borrowed employee status.

6. **Who furnished tools and place for performance?**

It is undisputed that Bayou furnished the place for performance. It is further undisputed that Bayou provided Plaintiff with a ladder and fall protection equipment, whereas Advantage provided him with "gloves, glass, whatever they need for the job."[37] The Court assumes "glass" refers to safety glasses, as this reference was made in connection with personal protective equipment ("PPE"). Thus, it appears both Bayou and Advantage provided Plaintiff with PPE. The Court finds this factor tilts slightly toward borrowed employee status.[38]

---

[34] *See e.g. Brown* at 678 (finding one month a sufficient amount of time to assess working conditions); *Alexander v. Chevron, U.S.A.*, 806 F.2d 526, 527 (5th Cir. 1986) (one year was a sufficient amount of time to assess working conditions).
[35] *Melancon*, 834 F.2d at 1246.
[36] *Id.* (quoting *Capps*, 784 F.2d at 617-18).
[37] ECF No. 103-6 at 21.
[38] *See e.g. Owen v. Chevron U.S.A. Inc.*, 8 F.3d 20 (5th Cir. 1993); *Melancon* at 1246; *Hotard v. Devon Energy Prod. Co. L.P.*, 308 Fed.Appx. 739, 741 (5th Cir. 2009).

7. **Was the new employment over a considerable length of time?**

"In the case where the length of employment is considerable, this factor supports a finding that the employee is a borrowed employee; however, the converse is not true."[39] Thus, even a single day of employment does not support a finding against borrowed employment status.[40] As previously noted, at the time of the incident, Plaintiff had been working at Bayou for either one or six months.[41] However, Plaintiff had worked at Bayou's facilities for a minimum of four years and five months, over the course of his working life.[42] Under these facts, the Court finds this factor tilts in Bayou's favor.[43]

8. **Who had the right to discharge the employee?**

The focus of this factor is whether Bayou had the right to terminate Plaintiff's services for Bayou, and "not whether it had the right to terminate his employment in general."[44] Here, it is undisputed that Bayou had the authority to discharge Plaintiff with respect to his services for Bayou, but not from his employment with Global. The Fifth Circuit has found similar situations support a finding of borrowed employee status.[45] Accordingly, the Court finds this factor favors finding borrowed employee status.

---

[39] *Capps*, 784 F.2d at 618.
[40] *Id.*
[41] ECF No. 99-2 at 37-39, 41.
[42] In fact, it appears that after graduating from high school, Plaintiff only worked (through staffing agencies) for Bayou, other than a two-month period when he did oil cleanup work for Young's Transportation, and a week he spent doing hurricane disaster work in Lake Charles, both of which occurred in 2004 or 2005. ECF No. 99-2 at 21, 40.
[43] *See Raicevic* at 1033 ("[I]n the LHWCA context, one year seems long enough to accept the risks of the job and consent to the statutory trade-off of receiving benefits in lieu of the possibility of winning a tort suit.").
[44] *Raicevic* at 1033.
[45] *See e.g. Id.* at 1034; *Brown* at 678; *Melancon*, 834 F.2d at 1246.

9.  **Who had the obligation to pay the employee?**

This factor does not focus on who paid the employee, but rather, where the funds originated from that were used to pay the employee.[46] Here, the funds used to pay Plaintiff originated from Bayou.[47] This factor supports a finding of borrowed employee status.[48]

## V.
### CONCLUSION

For the foregoing reasons, the Court concludes the nine-factor test for determining borrowed employee status is overwhelmingly satisfied in this matter. Accordingly, Bayou's Motion for Summary Judgment is GRANTED, and the claims brought by Plaintiffs Asa Sam and Tashana Jones against Bayou are DISMISSED with prejudice.

THUS DONE in Chambers on this ___11th___ day of April, 2025.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[46] *Raicevic* at 1034.
[47] *See* ECF Nos. 99-2, 99-3.
[48] *Raicevic* at 1034.