UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ASA ALEXANDER SAM, ET AL.** | **CASE NO. 6:22-CV-05208** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **BAYOU HOLDCO, INC., ET AL.** | **MAGISTRATE JUDGE DAVID J. AYO** |

**RULING**

Before the Court is a Motion for Partial Summary Judgment by Bayou Holdco, Inc. ("Bayou"), whereby Bayou seeks a judgment in its favor on its crossclaim against Global Industrial Solutions, LLC ("Global").[1] Specifically, Bayou seeks a judgment: (1) finding Global breached its contractual insurance obligations to designate Bayou as an additional insured on its commercial general liability policy with Zurich American Insurance Company ("Zurich"); (2) ordering Global to reimburse Bayou $104,857.34 in attorneys' fees that Bayou incurred through May of 2024 to defend against Plaintiff Asa Sam's claims; (3) ordering Global to assume responsibility for the payment of all defense costs and attorneys' fees incurred by Bayou through the remainder of this suit; and (4) ordering Global to indemnify Bayou for any judgment that may be rendered against it up to the $1 million in liability limits required under the governing contract.[2] Global opposes the motion, and Bayou has filed a reply.[3] For the reasons that follow, the motion is DENIED.

---

[1] ECF No. 88.
[2] *Id.*
[3] ECF Nos. 92, 93.

# I.
## Background

This suit was brought by Plaintiff Asa Sam for workplace injuries incurred on April 29, 2021. At the time of the incident, Plaintiff was employed by Global, a temporary staffing agency, and was assigned to perform rigging work at a facility owned by Bayou. The accident occurred when Plaintiff fell from a stack of eighteen-inch pipe located on a barge at a dock at the Port of New Iberia. Plaintiff asserts the fall caused him to sustain "a fractured femur that required extensive emergency care, two leg/hip surgeries, and a need for a total hip replacement surgery."[4] Plaintiff subsequently filed this suit to recover for his injuries. Plaintiff named Bayou, Global, and Staffmark Investment LLC d/b/a Advantage Resourcing ("Advantage"), among others, as Defendants. On December 8, 2023, Bayou brought a crossclaim against Global, alleging Global is contractually obligated "to defend, indemnify, and hold Bayou harmless from and against Mr. Sam's claims in this lawsuit,"[5] but Global has refused to do so.

# II.
## Applicable Law

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[6] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating

---

[4] ECF No. 128 at 3.
[5] ECF No. 59 at 7.
[6] Fed. R. Civ. P. 56(a).
[7] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

by competent summary judgment proof that there is an issue of material fact warranting trial.[8]

The opposing party may not create a genuine dispute simply by alleging that a dispute exists. Rather, the opponent must cite "to particular parts of materials in the record," or show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[9]

Under Louisiana law, a party asserting a claim for breach of contract must show: "(1) the existence of a contract; (2) a party's breach thereof; and (3) resulting damages."[10] The party asserting the breach bears the burden of proof.[11] The Court's role in interpreting the contract "is to ascertain the common intent of the parties to the contract."[12] If the wording is clear and unambiguous with regard to the parties' intent, the contract must be enforced as written.[13]

### III.
#### ANALYSIS

On February 15, 2018, Bayou and Advantage entered into a Staffing Agreement ("SA"), under which Advantage agreed to provide temporary staffing services to Bayou on a routine basis.[14] On February 21, 2018, Advantage entered into an Associate Supplier Master Services Agreement ("ASMSA") with Global, which effectively subcontracted Global to provide temporary workers to Bayou as needed under the SA.[15] Section 12 of the ASMSA reads in pertinent part:

> [A]t [Global's] expense and during the term of this Agreement or for so long as you assign Temporaries to [Bayou], [Global] will maintain in effect . . . the following insurance with the specified minimum policy limits: (i) **Commercial General**

---

[8] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994) (internal citations omitted).
[9] FED. R. CIV. P. 56(c)(1); *see also id.* at (c)(3) (the court need only consider the cited materials, although it is permitted to consider other materials in the record as well).
[10] *Weyerhaeuser Co. v. Burlington Ins. Co.*, 74 F.4th 275, 283 (5th Cir. 2023).
[11] *Id.*
[12] *Id.* (quoting *Mayo v. State Farm Mut. Auto. Ins. Co.*, 2003-1801, p. 2 (La. 2/25/04); 869 So.2d 96).
[13] *Id.*; *see also Lloyds of London v. Transcontinental Gas Pipe Line Corp.*, 101 F.3d 425, 429 (5th Cir. 1996).
[14] ECF No. 88-2.
[15] ECF No. 88-4.

> **Liability** - $1 million with $2 million aggregate. . . . [Global's] Commercial General Liability Insurance will designate [Advantage] and [Bayou] and our and their respective affiliates, officers, directors, and employees as **additional insureds** on coverage[] (i) . . . with respect to the rendition of staffing services. . . . All such insurance must be **primary and non contributory** for matters identified elsewhere in this agreement as your responsibilities and required to respond and pay prior to any other available coverage.[16]

Global also signed a "Client Addendum" to the ASMSA, which provides:

> [Global] further agrees that the terms and conditions set forth in the SA are incorporated into the ASMSA, and agrees that for all Services performed for The Bayou Companies, LLC, all duties, requirements and obligations which Advantage Staffing is required to fulfill under the SA, shall also be duties, requirements and obligations of [Global] under the ASMSA.[17]

The Staffing Agreement contains the following "Indemnification" provision:

> Contractor shall indemnify, defend, and hold harmless Bayou . . . from and against any and all losses, claims, demands, suits, actions, proceedings and expenses (including reasonable attorneys' fees), that are incurred by Bayou as a result of, in connection with or relating to Contractor's negligence or misconduct . . . in providing services pursuant to this Agreement . . . except to the extent such costs, damages and expenses are determined to have resulted from the negligence and/or willful misconduct of Bayou.[18]

Global did not explicitly "designate" Bayou as an additional insured on its CGL policy via a scheduled endorsement.[19] However, the policy contains a blanket "Additional Insured" endorsement, which provides that where a written contract requires Global to designate an organization as an additional insured, the organization will be deemed an "additional insured" under the policy, but:

only to the extent that "bodily injury" . . . is caused, in whole or in part by:

    (1) [Global's] acts or omissions; or

---

[16] *Id.* at 3-4.
[17] ECF No. 88-3 (emphasis omitted).
[18] ECF No. 88-2 at 9, ¶ 16.
[19] *See* ECF No. 92-1. "Under a scheduled endorsement, the additional insured must be identified by name in the endorsement or elsewhere in the policy." 4 PHILIP L. BRUNER AND PATRICK J. O'CONNOR JR., BRUNER & O'CONNOR CONSTRUCTION LAW § 11:465 (Nov. 2024 Supp.).

>> (2) [t]he acts or omissions of those acting on [Global's] behalf,
>
> in the performance of [Global's] ongoing operations, which is the subject of the written contract or written agreement.[20]

The exclusion additionally provides that the coverage "is primary to and will not seek contribution from any other insurance available to an additional insured."[21] Thus, under the language of the endorsement, additional-insured status extends only when required by contract (as in this case) and only when the claim "is caused, in whole or in part" by Global's acts or omissions in the performance of its operations for Bayou.

Bayou asserts that the undisputed facts show that Global is in breach of Section 12 of the AMSA, because Global failed to "specifically designate" Bayou as an additional insured on the CGL policy.[22] According to Bayou, this breach "requires Global to stand in the shoes of the insurer that would have provided primary and non-contributory liability insurance coverage to Bayou had Bayou been properly named as an additional insured."[23] Because (according to Bayou) Global must "stand in the shoes" of Zurich, Bayou contends it is entitled to a Court order mandating that: (1) Global must reimburse Bayou the $104,857.34 in attorney's fees Bayou incurred through May of 2024 in defense of this suit, (2) Global must "assume responsibility for the payment of all defense costs and attorney's fees incurred by Bayou through the remainder of this case," and (3) Global must "indemnify Bayou for any judgment that may be rendered against it up to the $1 million in liability limits required under the contract."[24]

---

[20] ECF No. 88-11 at 27-28.
[21] *Id.* at 29, ¶ D(1).
[22] ECF No. 88-1 at 5.
[23] *Id.*
[24] *Id.* at 6.

Global responds that summary judgment is inappropriate, because a material fact is in dispute regarding whether it breached the ASMSA—namely, whether Global's procurement of the blanket additional-insured endorsement is sufficient to satisfy its obligation to include Bayou as an additional insured on its CGL policy.[25] According to Global, because Bayou did not specify "the type or scope of coverage that was to be provided . . . whether by identifying the Insurance Services Office, Inc. ('ISO') standard form number or otherwise," Global satisfied its duty to procure insurance on behalf of Bayou through its blanket endorsement. Global further responds that because the indemnity agreement requires only that Global indemnify Bayou for Global's own negligence, but not for Bayou's negligence, there can be no determination of whether Global owes a "duty to provide Bayou defense and indemnity . . . until the lawsuit has been concluded."[26]

Bayou responds:

> [The ASMSA] **does** specify the scope of liability insurance that is required. It does so by requiring that Global maintain Commercial General Liability insurance in the amount of at least $1 million and by further requiring that such insurance designate Advantage and Bayou as additional insureds **without including any limiting language**. Bayou submits that Global's obligation to name Bayou as an additional insured . . . , without limiting language, cannot be satisfied by inclusion of an omnibus "additional insured" endorsement that does not actually provide Bayou with any coverage for liability arising out of its own fault.[27]

As to Global's argument regarding the scope of the indemnity agreement, Bayou responds that it is not seeking to enforce the indemnity provision, but rather, it is seeking to enforce Global's duty "to name Bayou as an additional insured on the Zurich policy and rule that . . . Global must therefore stand in the shoes of Zurich and assume the position of Bayou's insurer with respect to Mr. Sam's claims in this case."[28]

---

[25] ECF No. 92 at 4.
[26] *Id.* at 9.
[27] ECF No. 93 at 3.
[28] *Id.* at 5-6.

First, the Court finds Global is not in breach of its obligation to add Bayou as an additional insured on its CGL policy. The terms of the contract require Global to "designate" Bayou as an additional insured, and require that "such insurance must be primary and non contributory for matters identified elsewhere in this agreement as your responsibilities and required to respond and pay prior to any other available coverage."[29] The blanket endorsement provides exactly such coverage—it treats any organization (such as Bayou) whom Global is required to add as an additional insured under a written contract as an insured, and its coverage is "primary and noncontributory" for any losses Bayou incurs for "'bodily injury' . . . caused, in whole, or in part by: . . . [Global's] acts or omissions . . . in the performance of [Global's] ongoing operations, which is the subject of the written contract."[30] Nothing in the contracts between Bayou and Global defines Global's responsibilities as indemnification of Bayou for Bayou's own fault, as Bayou now argues.[31] Accordingly, the Court finds Global did not breach the provision of the contract requiring Global to inclue Bayou in its CGL policy as an additional insured.

As to the second issue raised, the Court agrees with Global that the remainder of the relief requested by Bayou—reimbursement of attorneys' fees, ordering Global to indemnify Bayou—is not ripe for adjudication at this time. A claim for indemnification for damages and defense costs is not ripe for adjudication until there is a finding of liability and allocation of fault.[32] The terms of

---

[29] ECF No. 88-4 at 3-4.
[30] ECF No. 88-11 at 28, 29.
[31] "In order for a party to be indemnified against its own negligence, the language of the contract must be clear and unequivocal. *Berry v. Orleans Parish School Bd.*, 830 So.2d 283, 285 (La. 2002). '[G]eneral words alone, i.e., "any and all liability," do not necessarily import an intent to impose an obligation so extraordinary and harsh as to render an indemnitor liable to an indemnitee for damages occasioned by the sole negligence of the latter.'" *Dowling v. Georgia-Pac. Corp.*, 302 Fed.Appx. 283, 285 (5th Cir. 2008).
[32] *Bennett v. DEMCO Energy Servs., LLC*, 2023-01358, p. 8 (La. 5/10/24); 386 So.3d 270, 276. Unlike an insurer's duty to defend, which arises "whenever the pleadings against the insured disclose a possibility of liability under the policy," contractual "indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid." *Meloy v. Conoco, Inc.*, 504 So.2d 833 (La. 1987); *see also Meloy v. Conoco, Inc.*, 817 F.2d 275, 280 (5th Cir. 1987); *Bennett*, *supra*.

the indemnity agreement require Global to defend and indemnify Bayou from losses, claims and expenses, "including reasonable attorneys' fees," incurred by Bayou due to Global's negligence. It excludes indemnification and defense costs to the extent such losses "are determined to have resulted from the negligence . . . of Bayou." Thus, Bayou's crossclaim is contingent upon the ultimate adjudication of Bayou and Global's liability to Plaintiff, as well as any allocation of fault between them. Accordingly, the Court cannot resolve, at this time: (1) whether attorney's fees are owed and, if so, the amount of such fees, (2) whether Global will ultimately be held responsible "for the payment of all defense costs and attorney's fees incurred by Bayou through the remainder of this case," and (3) whether Global will ultimately be required to "indemnify Bayou for any judgment that may be rendered against it up to the $1 million in liability limits required under Section 12 of the Associate Master Service Agreement."[33] Accordingly, these issues are deferred until there is a determination of liability and an allocation of fault.[34]

For the reasons set forth in this Ruling, the Motion for Partial Summary by Bayou Holdco, Inc. [ECF No. 88] is DENIED.

THUS DONE in Chambers on this 29th day of April, 2025.

_____
ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[33] ECF No. 88-1 at 9.
[34] Whether Zurich is in violation of its duty to defend Bayou under the blanket endorsement is not an issue before the Court at this time. *See e.g.* ECF No. 88-11 at 29, ¶ (C)(3); n. 32, *supra*.